**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| VERIFY SMART CORP. | Case No. 2:16-cv-00235-JRG |
| Plaintiff, | |
| v. | |
| TWITTER, INC. | |
| Defendant. | |

**DEFENDANT TWITTER, INC.'S MOTION TO TRANSFER VENUE TO THE
NORTHERN DISTRICT OF CALIFORNIA**

Defendant Twitter, Inc. ("Twitter") moves this Court to transfer this action to the San Francisco Division of the Northern District California pursuant to 28 U.S.C. § 1404(a) . The contentions of law, arguments, authorities, and evidence in support of Twitter's Motion are provided in the accompanying Brief in Support, as well as the declarations and exhibits filed herewith.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ..................................................................................................1

II.  BACKGROUND ...................................................................................................2

    A.  Plaintiff Has No Cognizable Connection to this District.........................2

    B.  Twitter Has No Connection to this District ............................................3

    C.  Potential Non-Party Witnesses Reside Outside of the Eastern District of Texas .......................................................................................................4

III.  LEGAL STANDARD............................................................................................5

IV.  ARGUMENT .........................................................................................................7

    A.  This Case Could Have Been Brought in the Northern District of California ..........7

    B.  The Private Interest Factors Favor Transfer ...........................................7

        1.  Sources of Proof Are Much More Accessible from the Northern District of California.......................................................................7

        2.  The Northern District of California Is More Convenient for All of the Potential Witnesses .............................................................9

            a.  The Northern District of California Is More Convenient for Non-Party Witnesses...................................................9

            b.  The Northern District of California Is More Convenient for Party Witnesses ........................................................10

        3.  The Northern District of California Possesses More Relevant Subpoena Power....................................................................11

        4.  Practical Issues Encouraging Expedient Adjudication Is Neutral .............12

    C.  The Public Interest Factors Favor Transfer ..........................................13

        1.  The Northern District of California has a Greater Interest in this Case......................................................................................14

        2.  The Remaining Public Interest Factors Are Neutral.................................15

V.  CONCLUSION.....................................................................................................15

# TABLE OF AUTHORITIES

Page

## <u>Cases</u>

*ATEN Int'l Co. v. Emine Tech. Co.*,
   261 F.R.D. 112 (E.D. Tex. 2009)............................................................ 5

*EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*,
   No. 2:10-CV-448-DF, 2012 WL 122562 (E.D. Tex. Jan. 9, 2012) ........................................ 14

*GeoTag, Inc. v. Starbucks Corp.*,
   No. 2:10-cv-572, 2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ............................................. 13

*In re Genentech*,
   566 F.3d 1338 (Fed. Cir. 2009)....................................................... passim

*In re Hoffman-La Roche Inc.*,
   587 F.3d 1333 (Fed. Cir. 2009)........................................................... 6, 14

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009)........................................................ 5, 6, 15

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008)................................................................. 6

*In re Verizon Bus. Network Servs., Inc.*,
   635 F.3d 559 (Fed. Cir. 2011)................................................................ 13

*In re Volkswagen AG*,
   371 F.3d 201 (5th Cir. 2004) ................................................................. 5

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) ................................................... 5, 7, 12, 15

*In re Zimmer Holdings, Inc.*,
   609 F.3d 1378 (Fed. Cir. 2010)........................................................ 12, 13

*Innovative Global Sys. LLC v. OnStar, LLC*,
   No. 6:10-CV-574-LED-JDL, 2012 U.S. Dist. LEXIS 114504 (E.D. Tex. Feb.
   14, 2012) ...................................................................................... 13

*Klausner Techs., Inc. v. Interactive Intelligence Grp., Inc.*,
   No. 6:11-cv-578-LED, slip op. (E.D. Tex. Sept. 26, 2012).................................. 13

*LT Tech, LLC v. FrontRange Solutions USA Inc.*,
   No. 3:13-cv-1901-M., 2013 WL 6181983, (N.D. Tex. Nov. 26, 2013) ..................... 11, 13, 15

*Mini Melts, Inc. v. Uniworld Corp. WLL*,
   No. 4:07-CV-069, 2008 WL 4441979 (E.D. Tex. Sept. 25, 2008).......................................... 6

*Minka Lighting, Inc. v. Trans Globe Imports, Inc.*,
   No. 3:02-CV-2538, 2003 WL 21251684 (N.D. Tex. May 23, 2003) ..................................... 14

*Network Prot. Scis. LLC v. Juniper Networks, Inc.*,
   No. 2:10-CV-224-JRG, 2012 WL 194382 (E.D. Tex. Jan. 23, 2012) ................................... 14

*On Semiconductor Corp. v. Hynix Semiconductor, Inc.*,
   No. 6:09-cv-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010).......................................... 10

*Paragon Indus., L.P. v. Denver Glass Machinery, Inc.*,
   No. 3-07CV2183-M, 2008 WL 3890495 (N.D. Tex. Aug. 22, 2008) ................................... 14

*Phil-Insul Corp. v. Reward Wall Sys., Inc.*,
   No. 6:11-cv-53 LED-JDL (E.D. Tex. Feb. 10, 2012) ........................................................... 12

*Promote Innovation LLC v. Bristol-Myers Squibb Co.*,
   No. 2:10-CV-120-TJW, 2011 WL 1399393 (E.D. Tex. Apr. 13, 2011).................................. 9

*Shoemake v. Union Pac. R.R. Co.*,
   233 F. Supp. 2d 828 (E.D. Tex. 2002) ................................................................................... 6

*Van Dusen v. Barrack*,
   376 U.S. 612 (1964) ............................................................................................................... 5

*Verify Smart Corp. v. Bank of Am., N.A.*,
   No. CIV. 14-5117 KSH CLW, 2015 WL 3965633 (D.N.J. June 30, 2015) ........................... 5

*Wireless Recognition Techs. LLC v. A9.com Inc.*,
   No. 2:10-CV-364-JRG, slip op. (E.D. Tex. Feb. 14, 2012) .................................................. 14

## **Statutes**

28 U.S.C. § 1391(c) ....................................................................................................................... 7

28 U.S.C. § 1404........................................................................................................................ passim

## **Rules**

Fed. R. Civ. P. 45 ............................................................................................................... 4, 11, 12

## I.      INTRODUCTION

This case has no relationship to the Eastern District of Texas.  Neither party resides here.

Neither party developed any of the technology at issue here.  There are no third-party witnesses

who live here.  There are no relevant documents here.  Plaintiff does not even allege that anyone

has suffered harm in this District.  This case simply does not belong here.  It belongs in San

Francisco, California.

Defendant Twitter has its headquarters in San Francisco and is incorporated in Delaware.

Twitter developed all of the technology Plaintiff accuses in this case at its offices in San

Francisco.  Similarly, the marketing and finance work done with respect to the accused

technology was done in San Francisco.  All of Twitter's own anticipated witnesses accordingly

reside in San Francisco, as do the documents that Twitter believes likely to be produced.

Twitter, in fact, has no offices or employees in this District, and thus no records or witnesses

from Twitter will come from this District.

Plaintiff Verify is a Nevada Corporation, which appears to have its principle place of

business, its registered agent, and all of its officers in Fernley, Nevada, a city near Reno.  It is not

registered to do business in Texas and does not appear to have paid any taxes in this district or in

Texas generally.  The named inventors on the patent that Verify asserts live in Coquitlam in

British Columbia, Canada, a city near Vancouver.  Both Fernley and Coquitlam are much closer

to San Francisco than Marshall, Texas.

Numerous likely third party witnesses are also closer to San Francisco than Marshall.

For instance, the original patent prosecutor for the patent that Verify asserts resides in Langley,

British Columbia in Canada (also near Vancouver) and maintains a mailing address in Blaine,

Washington, both of which are closer to San Francisco.  And many prior artists who will be

relevant to this case live in California within the Northern District of California's subpoena

power.  A map of the relevant evidence and witnesses shows that *all* such evidence is more convenient to the Northern District of California than this District:



Because the Northern District of California clearly would be a more convenient place for this litigation, Defendant Twitter asks the Court to transfer it there.

## II.     BACKGROUND

### A.     Plaintiff Has No Cognizable Connection to this District

Verify is not a Texas company.  It is a Nevada corporation.  ECF No. 1 ¶ 1.  All of its officers and its registered agent for service reside in Fernley, Nevada, a city near Reno.  See Declaration of Michael A. Feldman in Support of Motion to Transfer ("Feldman Decl.") Ex. A. Verify is not registered to do business in Texas, and does not appear to have paid any taxes in this district or in Texas generally.  *See* Feldman Decl. ¶ 3 & Ex. B.  There is no indication that Verify has any principals or employees who reside in this District.  *Id*. ¶ 2.

Verify asserts U.S. Pat. No. 8,285,648 (the "'648 Patent").  But that patent has no

relationship to this District either.  The listed inventor, Stewart Goodin, lives in Coquitlam, British Columbia, Canada, a city near Vancouver.  *See* Feldman Decl. Ex. C.  The listed assignee, Dan Scammell, also lives in Coquitlam.  *Id.*  The original patent prosecutor, Denis R. O'Brien, lives in Langley, British Columbia, Canada, another city near Vancouver.  *See id*.  Ex. D.  In fact, Verify filed its previous round of cases asserting the '648 Patent, in New York and New Jersey, not this District.  *Id*. Ex. G.

### B.  Twitter Has No Connection to this District

Twitter has its headquarters in San Francisco, California and is incorporated in Delaware. Declaration of Rishikesh Tembe in Support of Defendant Twitter, Inc.'s Motion to Transfer Venue ("Tembe Decl.") ¶ 2.  All of Twitter's own potential sources of evidence for this action are located in the Northern District of California.  For example, the product development teams for the technology that Verify accuses which relates to two-factor authentication, are based out of San Francisco.  *Id.* ¶ 5.  Similarly, the people most knowledgeable about the marketing, sales and finances of the Twitter services that use this technology all reside and work in or near San Francisco.  *Id.*  Accordingly, the following potential Twitter witnesses in this action reside and work in the Northern District:

- Raghav Jeyaraman, Senior Staff Software Engineer, who works on Twitter two-factor authentication and has worked at Twitter in San Francisco for five years;

- Jin Han, Senior Software Engineer, who works on Twitter two-factor authentication and has worked at Twitter in San Francisco for two years; and

- Rishi Tembe, Senior Product Manager, who works on the business side of Twitter and has worked at Twitter in San Francisco for one year.

*Id*. ¶ 6.

With all of its relevant employees located in San Francisco, it is unsurprising that all of Twitter's records regarding the accused technology are also located and maintained in San

Francisco or on a shared server accessed from San Francisco.  *Id.* ¶¶ 5–7.  These documents include the documents most likely to be requested and produced in this case including technical documents, sales and marketing materials and financial statements.  *Id.*  ¶ 7.  Moreover, Twitter houses and controls its source code for the accused technology in the Northern District of California, *id.*, and Twitter will seek a protective order in this case that permits inspection only at its counsel offices in San Francisco, California.

In contrast, Twitter does not have any potential party witnesses or sources of evidence that it understands to be located in this District.  None of the accused technology was developed in this District.  *Id.* ¶ 8.  And Twitter does not have an office—or any other facilities, employees, or equipment—in this District.  *Id.*

### C.      Potential Non-Party Witnesses Reside Outside of the Eastern District of Texas

Potential non-party witnesses reside in the Northern District of California.  For example, Kevin Weller, Stephen Ryan, Peter Hill, Thomas Manessis, Tony Lewis, Benedicto Dominguez, Peter Bray, and James Donald Reno are listed inventors on a patent prior art reference that Twitter is likely to rely on to prove invalidity in this case.  All eight named inventors list their residences in California, and seven of the eight reside in the San Francisco Bay area.  Feldman Decl. ¶ 12 & Exs. H & I.  These seven inventors live within the Northern District of California's subpoena power.  *See* Fed. R. Civ. P. 45(c)(1).  The *Weller* patent also lists Visa International Service Association as assignee.  *Id.* Ex. H.  Visa is based in Foster City, CA, also within the Northern District of California's subpoena power.  *See id.* Ex. H; Fed. R. Civ. P. 45(c)(1). Moreover, it is not conjecture that the *Weller* patent will be relevant prior art to the '648 Patent. This patent is one ground upon which a third party (Unified Patents Inc.) currently seeks to invalidate the '648 Patent in an *inter partes* review petition filed on April 13, 2016.  Feldman

Decl. Ex. J.

Other potentially important third-party witnesses reside much closer to San Francisco than Marshall.  For instance, the original patent prosecutor for the '648 Patent is Denis O'Brien. *Id.* ¶ 5.  Twitter expects to seek testimony from Mr. O'Brien regarding assignment and standing issues.  *Id.*  This issue is particularly of interest here because previous courts dismissed Verify's cases on the ground that it did not have a sufficient ownership interest in the '648 Patent to merit standing.  *Verify Smart Corp. v. Bank of Am., N.A.*, No. 14-5117 KSH CLW, 2015 WL 3965633, at *2 (D.N.J. June 30, 2015).  Mr. O'Brien resides in Langley, British Columbia in Canada (near Vancouver) and maintains a mailing address in Blaine, Washington.  Feldman Decl. Ex. D.  Mr. O'Brien would have to travel more than twice as far to get to Marshall, Texas as he would to get to San Francisco, California.  *See* Feldman Decl. ¶ 7.

## III.    LEGAL STANDARD

Courts may transfer a case to a different judicial district "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  The goals of §1404(a) are to prevent waste of time, energy, and money, and also to protect litigants, witnesses, and the public against unnecessary inconvenience and expense.  *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  "A motion to transfer venue should be granted upon a showing that the transferee venue is 'clearly more convenient' than the venue chosen by the plaintiff."  *In re Nintendo Co.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009); *In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (en banc).

In the Fifth Circuit, "[t]he first inquiry when analyzing a case's eligibility for 1404(a) transfer is whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 123 (E.D. Tex. 2009) (quotation omitted).  If so, "courts analyze both public and private factors

relating to the convenience of parties and witnesses as well as the interests of particular venues in hearing the case." *ATEN*, 261 F.R.D. at 123.  "The private factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious, and inexpensive." *Id.*  "The public factors are: (1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws or in the application of foreign law." *Id.*

"Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008).  Any significance in Plaintiff's choice of forum is further diminished in this case because Plaintiff does not reside here.  *E.g.*, *Shoemake v. Union Pac. R.R. Co.*, 233 F. Supp. 2d 828, 831 (E.D. Tex. 2002) ("[T]he plaintiff's choice of forum will be given close scrutiny where, as here, the plaintiff does not live within the Division of the Court."); *Mini Melts, Inc. v. Uniworld Corp. WLL*, No. 4:07-CV-069, 2008 WL 4441979, at *4 (E.D. Tex. Sept. 25, 2008). In fact, where a plaintiff has no relevant connection to a forum and the majority of relevant documents and witnesses are located outside the plaintiff's chosen venue —such as this case— transfer should be granted.  *See, e.g.*, *TS Tech*, 551 F.3d at 1321 (mandamus appropriate on transfer denial where "[n]one of the companies have an office in the Eastern District of Texas; no identified witnesses reside in the Eastern District of Texas; and no evidence is located within the venue."); *In re Genentech*, 566 F.3d 1338, 1348 (Fed. Cir. 2009); *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336–38 (Fed. Cir. 2009); *Nintendo*, 598 F.3d at 1198.

## IV.    ARGUMENT

### A.    This Case Could Have Been Brought in the Northern District of California

Twitter is headquartered in the Northern District of California and was subject to personal jurisdiction there when this action was filed.  *See* Tembe Decl. ¶ 2.  Therefore, this action could have been brought in the Northern District of California and the threshold requirement for transfer is met.  28 U.S.C. §§ 1391(c), 1404.

### B.    The Private Interest Factors Favor Transfer

The private interest factors favor transfer because the overwhelming balance of evidence and witnesses in this case resides in or near the San Francisco Bay Area, and because *no* such evidence or witnesses resides here in the Eastern District of Texas.

#### 1.    Sources of Proof Are Much More Accessible from the Northern District of California

The physical location of documents and evidence remains a "meaningful factor" in the transfer analysis despite advances in copying and electronic data transfer.  *See Volkswagen II*, 545 F.3d at 316; *see also Genentech*, 566 F.3d at 1345–46.  The vast majority of the documents and evidence are located in the Northern District of California—and no evidence is located in this District.

In "patent infringement cases, the bulk of the relevant evidence usually comes from the accused infringer" so that "the place where the defendant's documents are kept weighs in favor of transfer to that location."  *Genentech*, 566 F.3d at 1345 (quotation omitted).  Twitter is the defendant here, and it is the Twitter technology that Plaintiff needs to prove infringes.

Evidence regarding the accused Twitter technology—two factor authentication—is located in San Francisco.  That is where Twitter keeps its source code, and given the competitive sensitivity of Twitter's source code, San Francisco is where Twitter intends to make its source

code and proprietary algorithms available for inspection.  Tembe Decl. ¶ 7.  Further, as a

practical matter, it is likely that an engineer from Twitter's San Francisco offices will be needed

to assist with the source code inspection to, among other things, identify the relevant code

modules.  *Id*.  Thus, the best evidence of how the accused technology works cannot practicably

be produced anywhere other than the Northern District of California.

Twitter's other sources of party evidence (including documents and witnesses) are also

more accessible in the Northern District of California.  Twitter developed the technology

Plaintiff accuses in San Francisco, and that is where its relevant engineers and other employees

live and work and where Twitter stores all of its own physical and documentary evidence related

to the claims and defenses in this litigation.  *Id.* ¶¶ 5–7.

Moreover, Twitter is not aware of any evidence from Plaintiff that would be located in

this District.  Presumably, Plaintiff's documents and witnesses are in Fernley, Nevada, where

Verify is based, and San Francisco is much more convenient to Fernley than Marshall, Texas.

In addition, third-party evidence of prior art is likely to be located in the Northern District

of California.  Eight named inventors on a patent prior art reference issued to *Weller* list their

residences in California, and seven of the eight reside in the San Francisco Bay area.  Feldman

Decl. ¶ 12 & Exs. H & I.  This prior art formed the basis of an *inter partes review* petition filed

against the '648 Patent on April 13, 2016 and will likewise form the basis of invalidity

arguments in this litigation.  *Id.* ¶ 14.

This litigation also may feature issues related to Verify's ownership of the '648 Patent as

well as the patent's prosecution and the invention that its inventor believes to have made.  The

evidence related to these issues is likely to be located near Vancouver, British Columbia in

Canada, which is much closer to San Francisco than Marshall.  Feldman Decl. ¶ 7.  The original

patent prosecutor, Dennis O'Brien, is likely to have relevant information regarding assignment and he resides in Langley, British Columbia in Canada (near Vancouver) and maintains a mailing address in Blaine, Washington.  Feldman Decl. Ex. D & ¶ 5.  The named inventor for the '648 Patent, Stewart Goodin, lives in Coquitlam in British Columbia, Canada, which is also near Vancouver.  *Id.* ¶ 6.  Both Mr. O'Brien and Mr. Goodin would have to travel more than twice as far to get to Marshall, Texas as they would to get to San Francisco, California.  *See id.* ¶ 7.  Vancouver also has direct flights to San Francisco, but not to Marshall.  *Id.* Ex. E & ¶ 8.

Because the majority of the evidence is located in or nearer the Northern District of California, this factor favors transfer.  *Genentech*, 566 F.3d at 1345–46; *see also Promote Innovation LLC v. Bristol-Myers Squibb Co.*, No. 2:10-CV-120-TJW, 2011 WL 1399393, at *2 (E.D. Tex. Apr. 13, 2011) (finding this factor weighed in favor of transfer because neither party had documents in the Eastern District of Texas).

### 2.      The Northern District of California Is More Convenient for All of the Potential Witnesses

The Northern District of California is clearly more convenient than this District for all of Twitter's witnesses, Plaintiff's witnesses, and a number of prior art third-party witnesses.

### a.      The Northern District of California Is More Convenient for Non-Party Witnesses

There will likely be several non-party witnesses called in this case who reside in the Northern District of California.  As detailed above, this group includes at least eight individuals who reside in California and who possess knowledge regarding potentially-invalidating prior art.  Feldman Decl. ¶ 12.  These witnesses' testimony may be crucial for Twitter to develop its invalidity defenses.  There will likely be numerous other third-party witnesses who live nearer San Francisco than Marshall.  For instance, as described above, the '648 Patent inventor and the original prosecution counsel both live near Vancouver, which is nearer and more convenient to

9

San Francisco than Marshall.  *Id.* ¶¶ 5–6.  The Northern District is more convenient for these third-party witnesses, a factor that is typically "given greater weight than the convenience of party witnesses."  *On Semiconductor Corp. v. Hynix Semiconductor, Inc.*, No. 6:09-cv-390, 2010 WL 3855520, at *6 (E.D. Tex. Sept. 30, 2010).  Therefore, third-party witness convenience weighs heavily in favor of transfer.

### b.    The Northern District of California Is More Convenient for Party Witnesses

The Northern District of California is clearly more convenient than this District for Twitter's witnesses.  Twitter's engineering, product, and design teams responsible for the technology Plaintiff accuses are based in San Francisco.  Tembe Decl.  ¶¶ 5–7.  Accordingly, the employees most knowledgeable about the technical aspects of the accused service (including Devdatta Akhawe) are located in San Francisco.  *Id.*  The employees who would testify regarding the marketing, sales, pricing, and finances of the accused service (including Brad Silicani) are also located in San Francisco.  *Id.*  Twitter, in fact, is not aware of any potential employee witnesses located outside of the Northern District of California much less any such witnesses in this District.  *Id.* ¶ 8.

Here, the distance between Twitter's headquarters in San Francisco and this District is approximately 1,850 miles.  *See* Feldman Decl. ¶ 9.  By contrast, Twitter's headquarters is less than a mile from the San Francisco Division of the Northern District of California.  *See id.*  If this case remains in this District, multiple Twitter employees need to travel a substantial distance for trial to a location where they have no office, residence, operations, or community.  This would disrupt Twitter's business operations and would burden Twitter with disproportionate travel and lodging costs.  *See* Tembe Decl. ¶ 9.  By comparison, Twitter's party witnesses would incur only slight costs to attend trial in the Northern District of California because Twitter's

10

headquarters is less than a mile from the Northern District of California Courthouse.  *Id.*

The Northern District of California is also more convenient for Plaintiff's witnesses. All of Plaintiff's listed officers are in Fernley, Nevada, which is about 20 minutes from Reno. Feldman Decl. Ex. A & ¶ 2.  They could much more easily travel the approximately 250 miles to San Francisco—which has an airport with direct flights to Reno, Nevada—than Marshall, Texas—which has no direct flights to Reno.  *See* Feldman Decl. Ex. F & ¶ 10.

Consequently, the Northern District of California is clearly more convenient for all likely party witnesses.

### 3.    The Northern District of California Possesses More Relevant Subpoena Power

The availability of compulsory process factor weighs in favor of transfer when more witnesses reside within the subpoena power of the transferee venue than the current venue.  *See LT Tech, LLC v. FrontRange Solutions USA Inc.*, No. 3:13-cv-1901-M, 2013 WL 6181983, at *3 (N.D. Tex. Nov. 26, 2013); *Genentech*, 566 F.3d at 1345 ("The fact that [a] transferee venue is a venue with usable subpoena power . . . weighs in favor of transfer, and not only slightly.").  That is the case here.

The foreseeable party witnesses in this case are located outside of this Court's absolute subpoena power.  As documented above, all of Twitter's personnel responsible for the research, design, development, marketing and sale of the accused technology work at Twitter's San Francisco headquarters in the Northern District of California.  Tembe Decl. ¶¶ 5–7. Accordingly, all of Twitter's witnesses knowledgeable about the accused technology are outside the absolute subpoena power of this Court but within the Northern District of California's absolute subpoena power.  Thus, if Plaintiff wants to compel a particular Twitter employee to attend trial, the Northern District of California has the subpoena power to compel attendance.

This District does not.  This heavily favors transfer.  *See* Mem. Op. & Order at 6, *Phil-Insul*

*Corp. v. Reward Wall Sys., Inc.*, No. 6:11-cv-53 LED-JDL (E.D. Tex. Feb. 10, 2012), ECF No.

106 (100-mile rule "heavily favors transfer when a 'substantial number of material witnesses

reside in the transferee venue' and no witnesses reside in the transferor venue") (quoting

*Genentech*, 566 F.3d at 1344–45).

The Northern District of California's subpoena power is relevant to the likely third-party

witnesses as well.  Courts "must quash or modify" a subpoena that compels a person to travel

more than 100 miles (or to another state) to testify.  Fed. R. Civ. P. 45(d)(3)(A)(ii).  Similarly,

courts cannot compel a third-party witness to attend a deposition more than 100 miles from the

person's residence.  *Id.*  Unlike this District, the Northern District of California has absolute

subpoena power over seven third-party prior art inventors identified above in Section II(C) who

reside in the Northern District of California and who are likely to be important to Twitter's

invalidity arguments.  *See* Fed. R. Civ. P. 45(c)(1).

Because more witnesses reside within the subpoena power of the Northern District of

California, this factor strongly favors transfer to the Northern District of California.  *Volkswagen*

*II*, 545 F.3d at 316–17; *Genentech*, 566 F.3d at 1345.

### 4.    Practical Issues Encouraging Expedient Adjudication Is Neutral

Even though the other private interest factors favor transfer, Plaintiff might argue that

judicial efficiency justifies retaining venue in this District because Plaintiff chose to bring other

lawsuits before this Court involving the same asserted patent.  But Plaintiff's election to sue

multiple defendants in this forum cannot "create" judicial or other practical economies.  *See In re*

*Zimmer Holdings, Inc.*, 609 F.3d 1378, 1382 (Fed. Cir. 2010) (the existence of another suit in the

forum does not "negate[] the significance of having trial close to where most of the identified

witnesses reside and where the other convenience factors clearly favor" transfer).[1]  And, in any event, the "America Invents Act contemplates that each patent case will be treated separately." *LT Tech*, 2013 WL 6181983, at *5; *see also GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-cv-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) (permitting the existence of separately filed patent infringement cases to sway a venue transfer analysis would allow plaintiffs to "manipulate venue by serially filing cases within a single district" and "would undermine the principals underpinning transfer law and the . . . America Invents Act").

Nor has this Court had to invest significant energy into this case.  The Court has not held the initial scheduling conference.  No docket control order has issued, and discovery has not yet started.  A transfer at this early stage will not waste this Court's efforts or prejudice Plaintiff.

## C.      The Public Interest Factors Favor Transfer

Although the first, third, and fourth public interest factors are neutral as discussed below, the second public interest factor involving a forum's local interest weighs heavily in favor of transfer to the Northern District of California.

---

[1] Under similar circumstances, where a plaintiff chose to file multiple lawsuits in a district, and the defendant moved to transfer early in the litigation, courts have found the judicial economy factor neutral and granted transfer to the more convenient forum.  *See* Order at 7, *Klausner Techs., Inc. v. Interactive Intelligence Grp., Inc.*, No. 6:11-cv-578-LED (E.D. Tex. Sept. 26, 2012), ECF No. 36 (finding this factor neutral where the plaintiff had filed over fifty cases involving the same patent-in-suit as "case is still in its infancy; no discovery or status conference has taken place yet[;] and it would not overly prejudice [the plaintiff] if the case was transferred"); Order at 12, *Innovative Global Sys. LLC v. OnStar, LLC*, No. 6:10-CV-574-LED-JDL, (E.D. Tex. Feb. 14, 2012), ECF No. 156 (a "co-pending suit in its infancy . . . does not increase the Court's familiarity with the patents-in-suit and therefore does not implicate judicial economy"); *accord Zimmer*, 609 F.3d at 1382; *cf. In re Verizon Bus. Network Servs., Inc.*, 635 F.3d 559, 562 (Fed. Cir. 2011) ("[T]o hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a).").

### 1.    The Northern District of California has a Greater Interest in this Case

In a patent infringement action, "[t]he preferred forum is that which is the center of gravity of the accused activity." *Paragon Indus., L.P. v. Denver Glass Mach., Inc.*, No. 3-07CV2183-M, 2008 WL 3890495, at *3 (N.D. Tex. Aug. 22, 2008) (quoting *Minka Lighting, Inc. v. Trans Globe Imports, Inc.*, No. 3:02-CV-2538, 2003 WL 21251684, at *3 (N.D. Tex. May 23, 2003)).  "Indeed, the trier of fact ought to be as close as possible to the milieu of the infringing device and the hub of activity centered around its production." *Paragon*, 2008 WL 3890495, at *3 (internal quotation marks and citations omitted).  The Northern District of California has a far greater interest in this case than this District.  Twitter has been headquartered and doing business in the Northern District of California for more than 10 years.  Tembe Decl. ¶ 2.  That is where Twitter designed and developed the accused technology and thus where the activities related to the accused technology are conducted in the Northern District of California. *Id.* ¶¶ 5–7.  The Northern District of California's interest in this case is thus significant because the allegations call into question the work and reputation of engineers responsible for that work, as well as Twitter's reputation.  *Hoffman-La Roche*, 587 F.3d at 1336 (finding that the proposed transferee district's "local interest in this case remains strong because the cause of action calls into question the work and reputation of several individuals residing in or near that district and who presumably conduct business in that community"); *Wireless Recognition Techs. LLC v. A9.com, Inc.*, No. 2:10-CV-364-JRG, 2012 WL 506669, at *6 (E.D. Tex. Feb. 15, 2012) (granting transfer where, among other factors, defendants were headquartered in the Northern District, employed thousands of people there and developed the allegedly infringing products there); *Network Prot. Scis. LLC v. Juniper Networks, Inc.*, No. 2:10-CV-224-JRG, 2012 WL 194382, at *7 (E.D. Tex. Jan. 23, 2012) (similar); *EON Corp. IP Holdings, LLC v. Sensus, USA, Inc.*, No. 2:10-CV-448-DF, 2012 WL 122562, at *5 (E.D. Tex. Jan. 9, 2012) (similar).

By contrast, neither Twitter nor Plaintiff has any ties to this District.  Nor is the likelihood that people use the Twitter product in this District sufficient to create a local interest here.  Courts are to disregard local interests that "could apply virtually to any judicial district or division in the United States" in favor of particularized local interests relating to the "controversies and events giving rise to a case."  *Volkswagen II*, 545 F.3d at 318.  Accordingly, the Fifth Circuit and the Federal Circuit have "unequivocally rejected" weighing this factor in favor of retaining venue when a defendant's only connection to a venue is based on sales or use in that venue.  *Nintendo*, 589 F.3d at 1198; *Volkswagen II*, 545 F.3d at 317–18.

Because the technology Plaintiff accuses was designed, developed, marketed, and supported by a company in San Francisco, the Northern District of California has a substantially greater local interest than this District, and this factor heavily favors transfer.

### 2.      The Remaining Public Interest Factors Are Neutral

The first public interest factor—administrative issues related to congestion—is neutral. Although the speed with which a case can be resolved is a factor in the transfer analysis, the speculative nature of this factor generally does not weigh in favor of or against transfer.  *See LT Tech*, 2013 WL 6181983, at *6 (finding this factor neutral).

The third and fourth public interest factors—the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws—are neutral because this matter arises entirely under patent law.  *LT Tech*, 2013 WL 6181983, at *7–*8.  As a result, there is no foreseeable conflict of law, and both courts are equally capable of applying the applicable law.  *Id.*

## V.      CONCLUSION

Twitter requests the Court to transfer this case to the Northern District of California.

Dated:  June 9, 2016               GILLAM & SMITH, LLP

By:  */s/ Melissa R. Smith*
      Melissa Richards Smith
      Gillam & Smith, LLP
      303 South Washington Avenue
      Marshall, TX 75670
      903/934-8450
      Fax: 903/934-9257
      Email: melissa@gillamsmithlaw.com

      Ryan M. Kent (CA SBN 220441)
      rkent@durietangri.com
      Sonal N. Mehta (*Pro Hac Vice pending*)
      smehta@durietangri.com
      Michael A. Feldman (*Pro Hac Vice pending*)
      mfeldman@durietangri.com
      DURIE TANGRI LLP
      217 Leidesdorff Street
      San Francisco, CA  94111
      Telephone:    415-362-6666
      Facsimile:    415-236-6300

      ***Attorneys for Defendant Twitter, Inc.***

## **<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that counsel of record who are deemed to have consented to electronic service are being served this 9th day of June, 2016, with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

_/s/  Melissa R. Smith_
Melissa R. Smith

## **<u>CERTIFICATE OF CONFERENCE</u>**

This is to certify that counsel for Defendant spoke with counsel for Plaintiff on June 9, 2016, in compliance with Local Rule CV-7(h). Counsel for Plaintiff has indicated that the Motion is opposed.

By: _/s/Melissa R. Smith_
Melissa Richards Smith